UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MONDO POLYMERS
TECHNOLOGIES, INC.,

        Plaintiff,

  v.

MONROEVILLE INDUSTRIAL
MOLDINGS, INC.,

        Defendant.

Case No. 2:07-cv-1054
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) Defendant's motion for summary judgment of non-infringement (Doc. # 32) and a memorandum in support (Doc. # 33), Plaintiff's memorandum in opposition (Doc. # 36), and Defendant's reply memorandum (Doc. # 39);

(2) Plaintiff's motion for summary judgment of non-functionality (Doc. # 41), Defendant's response (Doc. # 46), and Plaintiff's reply memorandum (Doc. # 48); and

(3) Defendant's motion to strike (Doc. # 43), Plaintiff's memorandum in opposition (Doc. # 44), and Defendant's reply memorandum (Doc. # 45).

For the reasons that follow, the Court **DENIES** Defendant's motion to strike (Doc. # 43), **DENIES** Defendant's motion for summary judgment (Doc. # 32), and **GRANTS** Plaintiff's motion for summary judgment (Doc. # 41).

### I. Background

Offset blocks are used between a guardrail and the post that supports the guardrail. The

1

instant case involves an offset block design patent owned by Plaintiff, Mondo Polymer Technologies, Inc. The patent, United States Patent No. D473,954 ("the '954 patent"), features a single claim stated as "[t]he ornamental design for an offset block, as shown and described." (Doc. # 12-2, at 2.) Accompanying this claim are five figures that present the offset block, which the '954 patent describes as follows:

> FIG. 1 is a perspective view of an offset block embodying my new design.
>
> FIG. 2 is a top plan view thereof.
>
> FIG. 3 is a bottom plan view thereof.
>
> FIG. 4 is an end elevational view with the opposite end being a mirror image thereof; and,
>
> FIG. 5 is a front elevational view with the back being a mirror image thereof.

(Doc. # 12-2, at 2.) Plaintiff claims that Defendant, Monroeville Industrial Moldings, Inc., has infringed on the '954 patent by manufacturing an offset block known as the P-Block.

Previously, the parties submitted on their briefs the issue of claim construction of the '954 patent. Having considered the parties' briefing and the patent itself, the Court concluded that "the best representation of the claimed design in the instant case is embodied in the '954 patent itself" because "[t]he patent's figures adequately and best represent the claimed design and any attempt by this Court to present a verbal description would likely hurt rather than help the understanding of the claim by the parties and a jury." (Doc. # 30, at 3.) Following this claim construction decision, both sides moved for summary judgment. (Docs. # 32 & 41.) Defendant also filed a motion to strike (Doc. # 43) targeting Plaintiff's June 9, 2009 Notice of Filing Relevant Portions of Deposition Transcripts (Doc. # 42). The parties have completed briefing on all three motions, which are ripe for disposition.

## II. Motion to Strike

On June 9, 2009, Plaintiff filed a notice that it was filing accompanying portions of various depositions. (Doc. # 42.) The notice explains that the deposition filings were necessary to place in context those incomplete depositions portions that Defendant had previously filed and relied upon in its summary judgment briefing. The notice also contains additional content. For example, the notice provides that

> attached as Exhibit C are relevant portions of the deposition of Mr. Nevil Garrett, which demonstrate that Mr. Garrett is not an expert witness in this matter, but rather a fact witness with personal knowledge (pp. 40-41, 49, 62-63), that the two designs look "practically identical" (p. 41, 58-59), and that purchasers could be very easily confused and deceived (p. 84).

(Doc. # 42, at 2.) Defendant has moved to strike the notice and its attachments, arguing that such characterization of the depositions constitutes a thinly disguised attempt at filing a surreply without obtaining leave of court.

Plaintiff of course opposes the motion to strike. The company argues that Defendant is attempting to take unfair advantage of the fact that it noticed and took the depositions at issue only after Plaintiff had filed its memorandum in opposition to Defendant's motion for summary judgment. Defendant then used select portions of the deposition transcripts in its summary judgment reply memorandum, Plaintiff argues, in an attempt to present an incomplete view of the testimony to the Court. Alternatively, Plaintiff asks that the Court grant it leave to file the at-risk deposition portions.

Defendant in turn argues that the reason it conducted the depositions involved when it did is because Plaintiff identified the witnesses only *on the same day* in which Plaintiff filed its memorandum in opposition as part of the summary judgment briefing. Thus, Defendant argues,

Plaintiff is attempting to present summary judgment evidence that it should have presented as part of its memorandum in opposition briefing.

There is no doubt that Plaintiff's June 9, 2009 Notice of Filing Relevant Portions of Deposition Transcripts contain argument. (Doc. # 42.) The moment the filing goes beyond merely identifying the attached deposition transcripts to (however superficially) characterizing their substantive content or effect, Plaintiff impermissibly crosses the line from filing a simple notice to presenting argument embedded within that notice. The Court need not and does not strike the notice and its attachments, however, given that the Court has simply ignored the argument portions of the filing. Additionally, to the extent that Plaintiff's requested leave to file the attachments is necessary, the Court grants such leave. This Court prefers to decide cases on the merits. Both parties have briefed every issue *ad nauseam* and there is no prejudice to either party by this Court looking at a fuller set of facts. Defendant has taken ample opportunity to develop its arguments related to the fuller deposition portions in its motion to strike reply memorandum.

The Court therefore **DENIES** the motion to strike. (Doc. # 43.)

### III. Summary Judgment Motions

**A. Standard Involved**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is
4

essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**B. Defendant's Summary Judgment Motion (Doc. # 32)**

In moving for summary judgment on the issue of infringement, Defendant relies on the Federal Circuit's clarification of the test to be employed as set forth in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). In *Egyptian Goddess*, the court of appeals explained that "the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement" and also rejected adopting "the 'non-trivial advance' test, which is a refinement of the 'point of novelty' test." *Id.* at 678. Instead, the Federal Circuit held, "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Id.*

Under the ordinary observer test, there can be no infringement "unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.' " *Id.* (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116-17 (Fed. Cir. 1998)). The Federal Circuit explained that there are multiple potential tracks that the relevant

5

analysis might take:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by [*Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871)]. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . . Where there are many examples of similar prior art designs, as in a case such as [*Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893)], differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

*Id.* The Federal Circuit also emphasized that although "the burden of proof as to infringement remains on the patentee," the burden of production of comparison prior art is on the accused infringer "if the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement." *Id.*

The extant question is whether an ordinary observer (based on visual appearance alone or familiar with the prior art) would be deceived into believing the allegedly infringing product is the same as the patented design. *See Gorham*, 81 U.S. at 528 (describing the test as whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other"); *see also Egyptian Goddess*, 543 F.3d at 681. Defendant essentially argues that it is entitled to summary judgment because the P-Block features a clip attached to one end of one side, a feature not included in the '954 patent, and because the P-Block has flat flanges that do not extend the full length of the side wall or base, whereas the '954 patent features curved

flanges that extend the full length of the side wall or base.

Necessarily drawing all reasonable inferences in Plaintiff's favor, this Court concludes that a reasonable fact-finder could find by a preponderance of the evidence that an ordinary observer, taking into account the prior art, could believe the accused design to be the same as the patented design. The overall visual similarity of the blocks is significant. Although not identical, the blocks can be regarded as substantially similar, especially when the doctrine of equivalents is considered.

Moreover, in addition to the Court's own visual comparison of the blocks, expert witness Dick Powers testified on behalf of Plaintiff that the designs at issue were sufficiently similar and that a purchaser acting with his or her usual attention may confuse one block for the other. Although not employing "magic words" tracking the legal terminology precisely, the substance of Powers' testimony is clear and supports a factual dispute regarding substantial similarity mandating a denial of the extraordinary act of granting summary judgment. In reaching this additional conclusion, the Court recognizes that Defendant argues that Powers failed to discuss in his report whether the P-Block clip or the length of its flared flanges constitute insubstantial differences compared to the '954 patent. But Powers' conclusion–that there was sufficient similarity so that a purchaser acting with his or her usual attention might confuse the blocks for one another–implicitly rejects these being substantial differences. Rather than rendering no opinion about the differences as Defendant suggests, Powers necessarily rendered his opinion despite the differences. If he deemed the identified differences to be sufficiently substantial, Powers could not have logically reached the conclusion he reaches. The Court notes also that evidence exists that the designs involved in this litigation are collectively different than other

offset block designs.[1]

The Court **DENIES** Defendant's motion for summary judgment. (Doc. # 32.)

**C. Plaintiff's Summary Judgment Motion (Doc. # 41)**

As noted, Plaintiff filed a motion for summary judgment on Defendant's defense of non-functionality. Defendant filed a response in which it voluntarily withdrew "its eleventh affirmative defense and counterclaim of invalidity based on the functionality of the '954 patent." (Doc. # 46, at 4.) Thus, Defendant concluded, it "does not oppose . . . summary judgment on [its] eleventh affirmative defense and counterclaim that the '954 patent is invalid because it is functional." (*Id.*) Because Defendant has conceded summary judgment on this point–rather than moving to amend its pleading to effectuate the voluntary withdrawal Defendant suggests–the Court need not and does not address the substantive merits of Plaintiff's motion.[2]

In accordance with the parties' representations, the Court **GRANTS** Plaintiff's motion

---

[1] The parties disagree over whether evidence of intentional copying is relevant in the infringement context or only in the willfulness inquiry that would follow the threshold infringement issue. There is some evidence indicating that Defendant's P-Block design may have arisen from the demonstrated intentional copying of engineering drawings of Plaintiff's design–in fact, apparently with *literal* photocopying involved. There is also evidence opposing this contention. Because other evidence in this case proves dispositive of the summary judgment motion, this Court need not and does not resolve whether or to what extent the copying evidence could factor into the summary judgment inquiry.

[2] The Court notes, however, that Defendant suggests that Plaintiff filed its summary judgment motion in violation of Local Civil Rule 7.3(b) because Plaintiff did not seek Defendant's consent prior to filing the motion. This odd argument fails to recognize that the local rule cited plainly does not apply to summary judgment motions. *See* S. D. Ohio Civ. R. 7.3(b) ("A party filing any other type of motion to which other parties might reasonably be expected to give their consent (such as a motion to amend pleadings, for leave to file a document *instanter*, for voluntary dismissal of a complaint or counterclaim, or to correct an electronic filing involving a technical error in using the ECF system) shall comply with the procedure set forth in S. D. Ohio Civ. R. 7.3(a) before filing such motion.").

for summary judgment.[3] (Doc. # 41.)

## IV. Conclusion

For the foregoing reasons, this Court **DENIES** Defendant's motion to strike (Doc. # 43), **DENIES** Defendant's motion for summary judgment (Doc. # 32), and **GRANTS** Plaintiff's motion for summary judgment (Doc. # 41).

**IT IS SO ORDERED**.

           /s/ Gregory L. Frost
        GREGORY L. FROST
        UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff argues in its reply memorandum that much of Defendant's response brief impermissibly addresses the issue of non-infringement as opposed to the topic at hand of non-functionality. Plaintiff therefore states in a reply memorandum footnote that "[t]he Court should strike [Defendant's] Exhibit 1." (Doc. # 48, at 4 n.3.) This is a suggestion and not a motion. There being no motion before the Court, there is no need to determine whether the exhibit is improper. Moreover, this Court declines to *sua sponte* strike the purportedly offending exhibit. For the same reasons, the Court similarly declines to follow Plaintiff's directive that "the violating portions of [Defendant's] response should be stricken." (*Id.* at 5.)

Additionally, this Court notes that Plaintiff's reply memorandum is essentially the same sort of brief that it accuses Defendant's response of being–a brief targeting the non-infringement issue involved in Defendant's motion for summary judgment. Plaintiff apparently recognizes this fact to a degree and explains that Defendant's improper briefing "forces" Plaintiff to respond. (Doc. # 48, at 1.) Two wrongs do not make a right, and allegedly bad briefing does not permit opposing bad briefing.